FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

SEP 1 6 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

MOHINDER SINGH,

  Plaintiff,

vs.

REX REED, et. al.

  Defendants.

3:10-cv-00567-ECR (WGC)

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

  This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

  Before the court are the following motions: (1) Defendants' Motion to Enforce the Settlement Agreement (Doc. # 32);[1] (2) Defendants' Motion to Dismiss Lawsuit as Moot (Doc. # 24); and (3) Plaintiff's Motion for Leave to File Amended Complaint (Doc. # 35). After a thorough review, the court recommends that Defendants' Motion to Enforce the Settlement Agreement (Doc. # 32) be granted, and the remaining motions be denied as moot.

## I. BACKGROUND

  At all relevant times, Plaintiff Mohinder Singh (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 10) 1.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Rogelio Herrera, Jack Palmer, Howard Skolnik, and Cynthia Crone. (*Id.* at 2-3.) Rex Reed

---

[1] Refers to the court's docket number.

was dismissed on screening. (*See* Doc. # 9.)

Plaintiff alleges violations of his Fourteenth Amendment due process rights. (Doc. # 9 at 4.) Plaintiff claims that Defendant Herrera classified him as a sex offender, despite the fact that he has never been convicted of a sex offense. (*Id.*) Defendants Palmer and Skolnik denied his grievances, and the classification committee refused to change his status. (*Id.*) He requested reclassification, to no avail, and asserts that this has affected his eligibility for parole, minimum custody and house arrest. (*Id.*)

The parties appeared for an Early Mediation Conference on May 24, 2011, but mediation was unsuccessful. (*See* Doc. # 23.) On May 25, 2011, Defendants filed their Motion to Dismiss. (Doc. # 24.) On the same day, Plaintiff contacted counsel for Defendants to further explore the possibility of settlement. (*See* Doc. # 32-1 Ex. B-4.) Specifically, Plaintiff offered to settle the matter in exchange for a full classification hearing for possible release or camp eligibility or house arrest, a change to minimum custody and twenty (20) days good time credit. (*Id.*) Defendants countered with an offer to provide Plaintiff a full classification hearing with the opportunity to present evidence and witnesses in exchange for dismissal of the complaint. (Doc. # 32-1 Ex. B-5.) Defendants made clear that they could not guarantee the result of the classification hearing. (*Id.*) On May 31, 2011, Plaintiff responded: "I received your letter today informing me of the Defendants willing again to offer a Full Classification Hearing. **I am writing to let you know that I accept this proposed settlement and that you may begin to draft the necessary documents.**" (Doc. # 32-1 Ex. B-6, emphasis added.) In response to Plaintiff's acceptance, counsel for Defendants drafted a Settlement Agreement and Stipulation for Dismissal and sent it to Plaintiff on June 8, 2011. (Doc. # 32-1 Ex. B-7.) Plaintiff never returned an executed agreement and stipulation for dismissal to defense counsel. (*See* Doc. # 32 at 2.) On June 20, 2011, Plaintiff's counsel entered his appearance. (Doc. # 28.) On July 12, 2011, Defendants filed a Motion to Enforce the Settlement Agreement. (Doc. # 32.) On August 5, 2011, Plaintiff filed a Motion for Leave to File Amended Complaint. (Doc. # 35-36.)

## II. MOTION TO ENFORCE SETTLEMENT

The court has inherent authority under federal law to enforce a settlement agreement in an action pending before it. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) (citations omitted); *see also Marks-Foreman v. Reporter Pub. Co.*, 12 F.Supp.2d 1089, 1092 (S.D. Cal. 1998) (citations omitted). A settlement agreement must meet two requirements to be enforced. First, it must be a complete agreement. *Callie*, 829 F.2d at 890. Second, both parties or their authorized attorneys must agree to the terms of the settlement. *See Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977). If a party gives his or her attorney express permission to enter a settlement agreement, the attorney may do so. *Id.* at 1145. Where material facts concerning the terms or existence of settlement agreement are disputed, the parties are entitled to an evidentiary hearing. *Callie*, 829 F.2d at 890.

"[T]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally," even if the underlying cause of action is federal. *O'Neil v. Bunge Corp.*, 365 F.3d 820, 832 (9th Cir. 2004) (internal quotation marks and citations omitted) (applying Oregon law); *United Comm. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (applying California law); *Jeff. D. v. Andrus*, 899 F.2d 753, 769 (9th Cir. 1989) (applying Idaho law); *Turnberry Pavillion Partners, L.P. v. M.J. Dean Constr., Inc.*, 2009 WL 905055, at *3 (D. Nev. 2009) (applying Nevada law), *reversed on other grounds*, 378 Fed.Appx. 758 (9th Cir. 2010) (finding that Nevada law governed interpretation of the contract).

For a contract to be enforceable, basic contract principles require an offer and acceptance, meeting of the minds, and consideration. *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Where essential terms of a proposal are accepted with qualifications, or not at all, there is no agreement. *Heffern v. Vernarecci*, 92 Nev. 68, 70, 544 P.2d 1197 (1976). In Nevada, contract interpretation is a legal issue determined by the court. *Sheehan & Sheehan v. Nelson Malley and Co.*, 121 Nev. 481, 117 P.3d 219, 223 (2005);

*Canfora v. Coast Hotels and Casinos, Inc.*, 121 Nev. 771, 121 P.3d 599, 603 (2005) (per curiam).

First, the court finds the parties entered into a complete settlement agreement. While Defendants' state that a formal agreement and release would be prepared, the counter-offer and acceptance contain all material terms, and the fact that a more formal agreement was to be prepared and executed does not alter the validity of the agreement. *See, e.g., May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254 (Nev. 2005) (A contract can be formed, however, when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later."). Plaintiff does not argue that he was not agreeable to any of the terms ultimately contained in the formal agreement and stipulation for dismissal. Moreover, Plaintiff does not argue that *he* intended to be bound only upon execution of a formal long form agreement. Rather, he argues that Defendants made this a precondition, and that he did not sign the formal agreement and stipulation for dismissal because it did not give him an immediate change in classification status. Plaintiff's arguments are unconvincing.

The settlement was **not** contingent upon execution of a written long form agreement. Defendants' offered Plaintiff a full classification hearing in exchange for dismissal of the complaint. (Doc. # 32-1 Ex. B-5.) Rather than making acceptance contingent upon the execution of a long form agreement, the counteroffer states, "If you accept this proposed settlement, please let me know and I will begin drafting the necessary documents." (*Id.*) Plaintiff responded accepting Defendants' offer of a full classification hearing and informed defense counsel that she could begin drafting the necessary documents. (Doc. # 32-1 Ex. B-6.)

Plaintiff's interpretation of Defendants' language in the letter forwarding on the agreement and stipulation for dismissal is similarly unavailing. (*See* Doc. # 38 at 2, referring to Doc. # 32-1 Ex. B-7.) Defense counsel was responding to Plaintiff's request that the Motion to Dismiss be withdrawn. (Doc. # 32-1 Ex. B-7.) This does not communicate that the agreed upon terms of settlement, a full classification hearing in exchange for dismissal, are expressly contingent upon execution of a long form agreement.

Plaintiff also suggests the agreement is incomplete because his letter to defense counsel merely indicated that he would be amenable to settlement. (*See* Doc. # 38 at 2.) This is belied by Plaintiff's unequivocal acceptance of Defendants' counteroffer. As noted above, Plaintiff responded: "I received your letter today informing me of the Defendants willing again to offer a Full Classification Hearing. I am writing to let you know that I accept this proposed settlement and that you may begin to draft the necessary documents." (Doc. # 32-1 Ex. B-6.)

Plaintiff does not take the position the agreement was incomplete because *he* intended to be bound only upon execution of a formal agreement. Rather, Plaintiff asserts that the reason he did not sign the settlement agreement and stipulation for dismissal is because it did not provide him with an immediate change in classification status. (Doc. # 38 at 2-3.) This argument is simply illogical. In his initial communication to defense counsel, Plaintiff asked for a classification hearing to request a change in his classification status and twenty (20) days good time credit. (Doc. # 32-1 Ex. B-4.) Defendants conveyed a counteroffer of a full classification hearing in exchange for a dismissal of the case, and emphasized that they could make no promises as to the outcome of the classification hearing: "It is critical that you understand that Defendants are making no guarantee that your classification as a sex offender will be removed or that you will qualify for minimum custody or house arrest. The settlement will only guarantee you a Full Classification Hearing with the opportunity to present documents and witnesses." (Doc. # 32-1 Ex. B-5.) Plaintiff's acceptance undeniably manifests his understanding of Defendants' counteroffer: "I received your letter today informing me of the Defendants willing again to offer a Full Classification Hearing. I am writing to let you know that I accept this proposed settlement..." (Doc. # 32-1 Ex. B-6.) Had Plaintiff wanted to condition settlement on the promise that his classification status would be changed to minimum custody, he would not have written this letter decidedly accepting the full classification hearing, especially when defense counsel's letter was painstakingly clear that they could not guarantee the outcome of the hearing.

Second, it is undisputed that counsel for Defendants had permission to negotiate a

5

settlement, and Plaintiff negotiated the settlement on his own behalf.

Third, there is no question there was an offer, acceptance, meeting of the minds, and consideration. Plaintiff made an initial demand of a full classification hearing and twenty (20) days good time credit. (Doc. # 32-1 Ex. B-4.) Defendants submitted a counteroffer; a full classification hearing in exchange for a dismissal of the action. (Doc. # 32-1 Ex. B-5.) Plaintiff responded unequivocally: "I received your letter today informing me of the Defendants willing again to offer a Full Classification Hearing. I am writing to let you know that I accept this proposed settlement and that you may begin to draft the necessary documents." (Doc. # 32-1 Ex. B-6.) The court finds that Defendants' counteroffer and Plaintiff's response indisputably constitute an offer and acceptance, and there was most certainly a meeting of the minds. Plaintiff's acceptance could not be more clear: "I am writing to let you know that I accept this proposed settlement..." Plaintiff did not qualify his response. The counteroffer, which Plaintiff categorically accepted, did not require that his classification status be changed to minimum custody prior to the classification hearing. This was not an agreed upon term of the settlement. In fact, the counteroffer specifies: "Defendants are making no guarantee that your classification as a sex offender will be removed or that you will qualify for minimum custody or house arrest. The settlement will only guarantee you a Full Classification Hearing with the opportunity to present documents and witnesses." (Doc. # 32-1 Ex. B-5.) The fact that Plaintiff may have changed his mind or decided he could get a better deal after further reflection is not a basis for not enforcing the settlement agreement.

There is no doubt about the existence of consideration. In exchange for dismissal of the lawsuit, Defendants were to provide Plaintiff a full classification hearing, and vice versa. Therefore, Plaintiff and Defendants entered into an enforceable agreement. Plaintiff's reliance on a case from the Northern District of Oklahoma to argue that traditional contract principles do not apply to enforce a settlement agreement negotiated with an inmate is unavailing. (*See* Doc. # 38 at 3-4.) Courts in this district have applied traditional contract principles in this context, and the court is not aware of any authority in the Ninth Circuit that suggests anything

other than traditional contract principles should be utilized in the enforcement of settlement agreements involving inmates. *See, e.g., Wisenbaker v. Farwell*, 2010 WL 2035078 (D. Nev. 2010), and *Sloane v. Crone*, 2008 WL 3877051 (D.Nev. 2008).

Finally, with no material dispute about the terms of the settlement or the existence of the documents constituting the agreement, the court finds that an evidentiary hearing is not required.

### III. MOTION TO DISMISS

In light of the court's recommendation to enforce the settlement, it appears Defendants' Motion to Dismiss is moot. However, the court takes this occasion to point out that the argument asserted in Defendants' motion is not well taken. Defendants contend that this lawsuit is moot because Plaintiff declined his classification hearing. (Doc. # 24 at 3.) While Plaintiff may have declined his initial classification hearing, the court is not convinced that constitutes a waiver barring him from seeking reconsideration of his classification status in the context of any classification review to which he may be entitled. In fact, Plaintiff specifically alleges that he sent requests for reclassification. (Doc. # 10 at 4.) An inmate states a Fourteenth Amendment due process claim if he alleges he has been labeled a sex offender and has been denied the procedural protections outlined in *Neal v. Shimoda*, 131 F.3d 818, 830-31 (9th Cir. 1997). Plaintiff's initial decision to decline a classification hearing does not necessarily foreclose his ability to challenge his classification status when he is eligible for classification review. Nonetheless, Defendants' motion is moot as a result of the court's conclusion regarding enforcement of the settlement agreement.

### IV. MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Likewise, Plaintiff's Motion for Leave to File Amended Complaint (Doc. # 35-36) should be denied as moot in light of the court's recommendation to grant Defendants' Motion to Enforce the Settlement Agreement.

///

///

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion to Enforce the Settlement Agreement (Doc. #32), and **DENYING** Defendants' Motion to Dismiss (Doc. # 24) and Plaintiff's Motion for Leave to File Amended Complaint (Doc. # 35) as moot.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: September 16, 2011

_____
UNITED STATES MAGISTRATE JUDGE